COMMONWEALTH of Pennsylvania
by Gerald J. PAPPERT, Attorney
General, Plaintiff

v.

KT&G CORP., Defendant.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2004.
Decided Dec. 23, 2004.

Timothy P. Keating, Harrisburg, for plaintiff.

Kimberly M. Colonna, Harrisburg, for defendant.

BEFORE: COLINS, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are preliminary objections filed by KT&G Corporation (KT&G) in response to a complaint filed by the Commonwealth of Pennsylvania, by Gerald J. Pappert, Attorney General (the Commonwealth) in which it alleged that KT&G failed to deposit funds in an escrow account for the benefit of the Commonwealth in 2001 and 2002 as required by the Tobacco Settlement Agreement Act of 2000.

## I.

On November 23, 1998, leading United States tobacco product manufacturers entered into the Master Settlement Agreement (Agreement) with the Commonwealth in return for a release of past, present and certain future claims. The Agreement obligates the manufacturers to pay substantial sums to the Commonwealth tied in part to their volume of sales; to fund a national foundation devoted to educating consumers about the dangers of tobacco use; and to make substantial changes in their advertising and marketing practices and corporate culture. Subsequent to this Agreement, the General Assembly enacted the Tobacco Settlement Agreement Act of 2000 (Act)[1] to protect the Commonwealth and its citizens from the adverse economic and health effects resulting from cigarette smoking.

Because tobacco product manufacturers are not required to participate in the Agreement, the Agreement gives them a choice: they can either join in the Agreement and be treated as a "participating manufacturer" or remain a "non-participating manufacturer" (NPM) and escrow funds pursuant to a statutory formula based on the number of their cigarettes sold in Pennsylvania during the prior year. The second option is designed to ensure a source of financial recovery to the Commonwealth if the NPM is found liable for the financial burdens imposed on the Commonwealth by cigarette smoking. It also prevents NPMs from gaining an unfair price advantage over those companies that have chosen to be treated as a participating manufacturer under the Agreement. 35 P.S. § 5672(6). If an NPM fails to timely certify and/or timely fund the escrow account, a civil penalty may be imposed for each day of the violation.[2]

---

1. Act of June 22, 2002, P.L. 394, 35 P.S. §§ 5671–5675.

2. If the violation is a "knowing" violation, the maximum penalty is 15% per day of the amount not timely escrowed with a maximum amount of 300%. 35 P.S. § 5674(c)(2). If

## II.

The Commonwealth filed a four-count complaint alleging that KT&G is a tobacco product manufacturer of "Carnival" brand cigarettes that were sold in Pennsylvania. Because KT&G chose not to enter into the Agreement, it was required to escrow funds every year for the sale of its cigarettes in Pennsylvania pursuant to the Act. From June 22, 2000 through December 31, 2000, 8,987,400 "Carnival" brand cigarettes were sold in Pennsylvania. Based on those sales, KT&G was required to deposit $100,214.90 by April 15, 2001, in a qualified escrow fund. The complaint alleged that KT&G did not deposit the full amount due until December 18, 2001, and instead, on April 11, 2001, it deposited less than half of the amount due—$42,808—in an unqualified escrow account. Between April 15, 2001 and December 24, 2001, the Commonwealth notified KT&G and its United States importer, General Tobacco, five times that KT&G was not in compliance with the Act. On December 24, 2001, KT&G advised the Commonwealth that the additional $57,406.63 had been deposited on December 18, 2001.

The complaint further alleged that in 2001, 34,058,320 "Carnival" brand cigarettes were sold in Pennsylvania, and KT&G was required to deposit $508,511.15 by April 15, 2002, into a qualified escrow fund. On March 7, 2002, General Tobacco sent the Commonwealth a letter requesting a total stick count for "Carnival" brand cigarettes sold in Pennsylvania in 2001. The Commonwealth responded by advising General Tobacco that 32,065,340 Carnival cigarettes had been sold in 2001 and KT&G would have to place $478,754.77

into escrow by April 15, 2002. On April 12, 2002, KT&G deposited $335,128.52 into its escrow account. On May 13, 2002, the Commonwealth advised KT&G that the deposit was deficient and an additional $143,626.25 was required. A similar letter was sent on June 6, 2002, when the money was not received. On June 14, 2002, KT&G's agent informed the Commonwealth that the remaining monies had been deposited; however the Commonwealth contends that KT&G's escrow account for sales in 2001 remains underfunded by $29,756.39.

In Counts I and III of the complaint, the Commonwealth alleged that KT&G failed to escrow $57,406.63 for cigarette sales in 2001 and $173,382.63 for cigarette sales in 2002, and it should be assessed a civil penalty in the amount of $57,406.63 and $173,382.63, respectively, for its failure to do so. In Counts II and IV, the Commonwealth alleged that because KT&G knowingly violated the Act by failing to escrow the funds, we should assess KT&G civil penalties in the amount of $172,219,89 for its cigarette sales in 2000 and $430,878.75 for its cigarette sales in 2001.

KT&G filed preliminary objections arguing that this Court lacked personal jurisdiction over KT&G because KT&G was a Korean corporation with its principal place of business in Korea; it did not transact business in Pennsylvania, and it did not have sufficient minimum contacts in Pennsylvania to support Pennsylvania's exercise of jurisdiction over KT&G without violating fundamental notions of fairness and due process. KT&G also alleged that the reason it established and maintained an escrow account and was required to satisfy

---

the violation is inadvertent, the maximum penalty is 5% per day of the amount not timely escrowed with a maximum amount of 100%. 35 P.S. § 5674(c)(1). If an NPM has two "knowing" violations, it is subject to a

possible two-year injunction on sales in Pennsylvania. Each year a manufacturer fails to properly escrow funds constitutes a separate offense. 35 P.S. § 5674(c)(3).

the requirements of the Tobacco Product Manufacturer Directory Act (Directory Act),[3] i.e., submit certification and obtain an agent in Pennsylvania, was because it received threats from the Commonwealth that its cigarettes would be banned from sale in Pennsylvania. It further argued that the Commonwealth's complaint failed to conform to Pa. R.C.P. No. 1019(i)[4] because it did not attach the correspondence to its complaint upon which it relied to prove that it notified KT&G that it failed to make the required escrow deposits.

■ In response, the Commonwealth filed an answer to KT&G's preliminary objections denying that it had threatened to ban KT&G products from sale in Pennsylvania or that KT&G established and maintained escrow accounts for the sale of its cigarettes in Pennsylvania because of any stated or implied threats from the Commonwealth. Rather, the Commonwealth alleged that KT&G established the escrow accounts because it realized that it was legally required to do so. Further, the Commonwealth alleged that this Court has personal jurisdiction over KT&G because KT&G demonstrated a specific intent to target Pennsylvania consumers for the sale of its cigarettes by submitting certifications under the Agreement to ensure that its cigarettes could be sold in Pennsylvania. Additionally, KT&G ubmitted a certification under the Directory Act to have its products included on Pennsylvania's directory of approved tobacco products for sale in Pennsylvania, and as part of that certification, KT&G appointed an agent located in the Commonwealth to act as its agent for service of process.[5]

### III.

■ Once a defendant raises the defense of lack of personal jurisdiction, the plaintiff has the burden of proving jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident National Bank v. California Fed. Sav. & Loan Ass'n.*, 819 F.2d 434 (3d Cir.1987). Whether there are sufficient minimum contacts to assert in personam jurisdiction is determined by 1) whether the defendant's conduct and his contact

---

**3.** Act of December 30, 2003, P.L. 441, 35 P.S. §§ 5702.101–5702.2102. Under the Directory Act, the Attorney General publishes a directory of all tobacco product manufacturers and their brand families that have provided current and accurate certification under Section 303 of the Directory Act, 35 P.S. § 5702.303. The certification states that the manufacturer is in full compliance with the Directory Act and the Act, and if the manufacturer is non-participating, it has established and maintains an escrow account approved by the Attorney General. 35 P.S. § 5702.303. A non-participating manufacturer is also required to include in its certification, among other things, a list of all of its brand families that were sold in the Commonwealth during the preceding and current calendar years, 35 P.S. § 5702.304, appoint and engage the services of an agent located in the Commonwealth to act as an agent for the service of process of any action or proceeding against it relating to the enforcement of the Directory Act and the Act, 35 P.S. § 5702.305, and maintain invoices and documents of sales and other information relied upon for a period of five years. 35 P.S. § 5702.306.

**4.** Pa. R.C.P. No. 1019(i) provides:

When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.

**5.** In ruling on preliminary objections, we must accept as true all well-pled facts which are relevant and material, as well as all inferences reasonably deducible therefrom. *Texas Keystone, Inc. v. Pennsylvania Department of Conservation and Natural Resources*, 851 A.2d 228 (Pa.Cmwlth.2004).

with the forum state are such that he should reasonably anticipate being hauled into court there; and 2) whether the defendant purposefully directed his activities at residents of the forum state and purposefully availed himself of the privilege of conducting activities within the forum state so as to invoke the benefits and protection of its laws.[6] *Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110 (1992).

■ Initially, the Commonwealth contends that KT&G waived its right to assert that the Commonwealth lacks personal jurisdiction because KT&G filed suit against the Commonwealth in the United States District Court for the Middle District of Pennsylvania in March 2004 requesting the Court to restrain the Commonwealth from excluding KT&G from Pennsylvania's Tobacco Product Manufacturers Directory. The Commonwealth argues that KT&G cannot bring suit against the Commonwealth in Pennsylvania to protect its cigarette sales and then object to personal jurisdiction when the Commonwealth brings a suit involving the same matter.

Even assuming that to be true, when preliminary objections are raised under Pa. R.C.P. No. 1028(a)(1), relating to lack of jurisdiction over the defendant, they must be endorsed by a notice to plead or no response will be required under Pa. R.C.P. No. 1029(d) (averments in a pleading to which no responsive pleading is required shall be deemed to be denied). Because KT&G's preliminary objections were accompanied by a notice to plead, the Commonwealth was required to file an answer, which it did, arguing that KT&G established the escrow account because it was required to do so and that this Court had personal jurisdiction over KT&G because it had submitted certifications under the Agreement and under the Directory Act and had appointed an agent in the Commonwealth. It did not, however, raise in new matter that KT&G had waived its right to object to personal jurisdiction and, in fact, consented to personal jurisdiction because it had filed an action against the Commonwealth in the United States District Court for the Middle District of Pennsylvania in March 2004 in a related matter. Pa. R.C.P. No. 1030(a), relating to new matter, provides that all affirmative defenses, including the defense of consent, must be pled in a responsive pleading under the heading "New Matter." Because the Commonwealth did not raise the affirmative defense of consent in its answer under new matter as required under Pa. R.C.P. No. 1030, it has waived this argument and KT&G has not waived its objection to personal jurisdiction in the present matter.

As to whether this Court has personal jurisdiction over KT&G, in *McCall v. Formu–3 International, Inc.,* 437 Pa.Super. 575, 650 A.2d 903 (Pa.Super.1994), *petition for allowance of appeal denied,* 541 Pa. 640, 663 A.2d 692 (1995), the Court held that in order to determine whether a defendant had the requisite minimum contacts with the forum state, it had to be determined whether the defendant had "purposefully directed its activities at residents of Pennsylvania and purposefully availed itself of the privilege of conducting

---

6. There are two ways in which a court may exercise personal jurisdiction over a non-resident defendant: either by general jurisdiction, which is based upon the defendant's general activities within the state (42 Pa.C.S. § 5301), or by specific jurisdiction, which is based upon the defendant's specific actions (42 Pa. C.S. § 5322). In either case, Pennsylvania courts may only exercise jurisdiction and subject the defendant to personal jurisdiction where a defendant's contact with Pennsylvania is sufficient under the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Kubik.*

activities within Pennsylvania, thus invoking the benefits and protection of its laws." *Id.* at 581, 650 A.2d 903. In *McCall*, Nippon, a Japanese corporation that produced and distributed pharmaceuticals and chemicals, was sued by McCall, who was allegedly injured by the ingestion of L-tryptophan that was found in a weight-loss product, which she claimed was manufactured and/or distributed by Nippon. McCall alleged that Nippon had entered into a joint venture with Sartomer Company, Inc., a corporation located in Pennsylvania, with which it had on-going contacts and distributed the product in Pennsylvania. Nippon filed preliminary objections raising personal jurisdiction which were granted by the trial court.

On appeal, we determined that Pennsylvania did not have personal jurisdiction over Nippon because Nippon's activities outlined did not suggest that Nippon had purposefully directed its activities towards Pennsylvania residents. Specifically, Nippon had never sold L-tryptophan to any United States company; it did not advertise the product in the United States; no agent of Nippon ever visited the Commonwealth with regard to L-tryptophan sales and the L-tryptophan manufactured by Nippon went through at least four different companies before ending up in McCall's hands. Further, Nippon did not own property in Pennsylvania and did not maintain a bank account in Pennsylvania. Therefore, there was no evidence that Nippon was actively engaging in business in Pennsylvania. *See also Asahi Metal Indus. Co. Ltd. v.Super. Ct. of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Kim Ly Chea v. Wilhelm Fette GmbH*, 2004 WL 220866 (E.D.Pa. filed January 7, 2004).

In this case, there is an affidavit by Seog Yoon Hwang that he is employed as the General Manager of the Overseas Business Office of KT&G. In that affidavit, he avers that KT&G:

- Conducts business principally in Korea;
- Has never maintained an office in Pennsylvania and has never had a Pennsylvania mailing address;
- Has no employees or agents to transact business in Pennsylvania and holds no real estate in Pennsylvania;
- Does not conduct business in Pennsylvania and is not registered to do business in Pennsylvania;
- Does not sell tobacco products in Pennsylvania, does not advertise its tobacco products in Pennsylvania, and does not affix to packages of its tobacco products the excise tax stamps that are required to sell tobacco products in Pennsylvania;
- Sells tobacco products F.O.B., Busan, Korea, to importers that import them into the United States; and
- Has not directed its business activities at residents of Pennsylvania.

The affidavit further avers that the importers distribute the tobacco products to wholesalers or distributors throughout the United States, some of whom are located in Pennsylvania. Finally, the affidavit avers that KT&G received demands from the Commonwealth that KT&G's tobacco products would be banned from sale if it did not comply with the Escrow Statute and Directory Act thereby requiring it to establish an escrow account and undertake the requirements of the Directory Act.

While the contacts with the state involving the sale of cigarettes to its distributors may be insufficient to establish personal jurisdiction in Pennsylvania, KT&G's attempt to comply with the Directory Act so as to allow its cigarettes to be sold in Pennsylvania created sufficient contacts for this court to exercise personal jurisdiction. By escrowing money, filing certifications, applying to place its cigarette brands

on Pennsylvania's tobacco directory and obtaining an agent to accept service, KT&G, in effect, admitted that it decided to purposefully engage in the privilege of conducting business in Pennsylvania so that it could purposefully direct its products to Pennsylvania residents. Moreover, by designating an agent to accept service, it acknowledged that its activities could result in it being sued in Pennsylvania.

Notwithstanding those contacts, KT&G alleges that those activities were done under duress because the Commonwealth "threatened" that its cigarettes would be banned from sale in Pennsylvania if it did not do those things. However, no one could require it to undertake those activities if it merely wanted its cigarettes to enter into the stream of commerce and, by chance, end up for sale in Pennsylvania. KT&G had the option of not complying with the Commonwealth's requirements by not opening escrow accounts or providing certifications, but it chose to take affirmative steps so it could continue selling its cigarettes in Pennsylvania through a distributor. Moreover, KT&G could have instituted an action arguing that the Commonwealth could not impose such a requirement because there were not sufficient contacts and/or its distributors could have challenged that portion of the Act as being illegal. Once, however, it complied with the Commonwealth's requests, KT&G did more than simply place its product in the stream of commerce and had it swept into Pennsylvania by a distributor. It purposefully availed itself of the privilege of conducting activities in Pennsylvania, and its actions do not amount to "random, fortuitous, or attenuated" contacts which would be insufficient for asserting personal jurisdiction.

Consequently, this Court has personal jurisdiction over KT&G and the preliminary objections filed by KT&G are denied.

***ORDER***

AND NOW, this *23rd* day of *December,* 2004, the preliminary objections filed by KT&G Corp. are denied.