John J. TSUCALAS and The Memorial Holy Monastery of St. Andrew Apodimon Trust, Appellants

v.

**HOLY XENOPHONE MONASTERY.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.
Decided Dec. 31, 2007.

Michael E. Garner, Philadelphia, for appellants.

Alison C. Finnegan, Philadelphia, for appellee.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

John J. Tsucalas (Tsucalas) and The Memorial Holy Monastery of St. Andrew Apodimon Trust (Trust) (together, Appellants), appeal from an order of the Court of Common Pleas of Philadelphia County that sustained preliminary objections filed by Holy Xenophontos Monastery (Monastery). The trial court dismissed the declaratory judgment action commenced by Appellants against the Monastery pursuant to Pa. R.C.P. No. 1028(a)(1) for lack of personal jurisdiction over the Monastery. Appellants question whether the trial court erred in sustaining the objections and dismissing the complaint despite allegations of material fact that the Monastery exercised powers as an officer and director of the Trust, a Pennsylvania nonprofit corporation, thus subjecting it to the jurisdiction of the Pennsylvania courts under Section 5322 of the Uniform Interstate and International Procedure Act, *as amended,* 42 Pa.C.S. § 5322, known as the Long–Arm Statute.

I

The complaint states, *inter alia,* that Tsucalas is an individual with a Pennsylvania address and that the Trust is a Pennsylvania nonprofit corporation, registered with the Department of State pursuant to the Nonprofit Corporation Law of 1988, 15 Pa. C.S. §§ 5101–6162 (Nonprofit Corporation Law), with its office address in Philadelphia. The Monastery is a religious society and/or a nonprofit entity whose address is Mount Athos, Chalkidiki, Greece. The purpose of the Trust, as set forth in its Bylaws, is to provide funds for the building and maintenance of a monastery as a memorial to Greek, American and Australian servicemen who have fallen in service of their country in Greece and for the creation of a school for monastic educational deeds and works, including religious education of persons wishing to join the Greek Orthodox priesthood. The original Board of Directors consisted of Archbishop Ezekiel Tsoukalas, Tsucalas, Dimitri T. Tsoukalas and Nicholas E. Chimicles. Archbishop Tsoukalas was elected Chairman of the Board and was designated President of the corporation. Under its Articles of Incorporation, the Trust was to have no members other than its Board.

The original Bylaws provided that the Board of Directors and the President should serve for life. Vacancies on the Board should be filled by a majority vote of the remaining members, and a vacancy in the office of Chairman should be filled by the appointment of the then current Abbot of St. Andrew's Monastery or his successors or assigns. Thereafter, the office should succeed to each successive Abbot of St. Andrew's Monastery, each of

whom should serve for life. Further, the original Bylaws provided that no resolution of the Officers or the Board should be valid unless it was approved by the Chairman and President in writing. Although identified in the corporate documents, St. Andrew's Monastery did not exist when the Trust was formed, and it was never brought into existence.

The Trust purchased about eleven acres in the area of Kapandriti in November 1984 (Kapandriti lot). The purchase was duly recorded in the name of the Trust with the Land Registry of Marathon, Prefecture of Attica. Archbishop Tsoukalas died on July 22, 1987, and his holographic last will and testament bequeathed the total of his personal property, movables and immovables, to the Trust, mistakenly including the Kapandriti lot. On August 28, 1987, the remaining members of the Board of Directors approved amendments to the Bylaws, deleting the original provisions pertaining to filling a vacancy for Chairman and instead requiring a majority vote of all Board members at a regular or special meeting and deleting the requirement of written approval. The Board then elected Tsucalas as Chairman and President; no further elections have occurred.

In December 1988 the Monastery instituted suit against the Trust in the Greek civil courts, seeking to be recognized as the sole owner of the Kapandriti lot as successor in interest to the current Abbot of St. Andrew's Monastery. Its claim was based on Archbishop Tsoukalas' ownership of some land near Mount Athos, which it claimed was within its territory as the primary monastery in that area, although the Kapandriti lot is hundreds of miles away. In accordance with Greek law the Monastery's suit was registered with the Land Registry of Marathon, which served as effective notice to any prospective purchasers and effectively prevented the Trust from selling the property.

In March 1990 the Trust filed a petition seeking to strike registration of the Monastery's suit from the Land Registry records on the ground that the Kapandriti lot was never the personal property of the Archbishop. At the initial hearing, the Monastery asserted that the Trust was not lawfully represented by Tsucalas; rather, under the original Bylaws the offices of Chairman and President were to succeed to the current Abbot of St. Andrew's Monastery, his successors or assigns, and the Monastery claimed to be the successor to St. Andrew's Monastery. It asserted that the amendment to the Bylaws was ineffective because no resolution could be effective without written approval of the Chairman and President. Litigation between the Trust and the Monastery proceeded in the Greek courts between 1990 and 2000 as to the rightful representation of the Trust by Tsucalas. In a published decision in March 2000, the Supreme Court of Greece referred the case back to the Court of Appeals. There have been no further legal proceedings since that decision.[1]

---

1. The legal assertions of the complaint are that pursuant to Article 10 of the Greek Civil Code, the capacity of a legal entity is governed by the law of the place where its registered offices are located; accordingly, that issue is governed by the law of Pennsylvania. Section 5793(a) of the Nonprofit Corporation Law, 15 Pa.C.S. § 5793(a), provides that "[u]pon petition of any person whose status as, or whose rights or duties as, a member, director, ... officer or otherwise of a non-profit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action." Section 5791(1), 15 Pa.C.S. § 5791(1), defines "corporate action" to include "[t]he election, appointment, designation or other selection and the suspension, removal or expulsion of members, directors ... or officers of a nonprofit corporation." Section 5504(a), as amended, 15 Pa.C.S. § 5504(a), provides that "[t]he members entitled to vote shall

The Monastery filed preliminary objections to Tsucalas' declaratory judgment action, including an objection pursuant to Pa. R.C.P. No. 1028(a)(1) that personal jurisdiction may not be exercised over the Monastery in Pennsylvania. The Monastery asserted that it has no continuous or systematic contacts with Pennsylvania and had never availed itself of the privilege of conducting activities here nor had it invoked the benefits and protections of its laws. The Monastery had no officers, transacted no business, did not use or have any interest in real or personal property in the Commonwealth and did not consent to jurisdiction here. The plaintiffs did not allege harm due to an act in Pennsylvania; rather, the action complained of was the filing of a suit in Greece concerning real property there.

The trial court sustained the Monastery's preliminary objection and dismissed the complaint. Under Chapter 53 of the Judicial Code, 42 Pa.C.S. §§ 5301—5329, Pennsylvania courts exercise two kinds of personal jurisdiction over nonresident defendants: general jurisdiction, which is founded on a defendant's general activities in the forum as evidenced by continuous and systematic contacts with the state, and specific jurisdiction, which is focused on the particular acts of a defendant that gave rise to the underlying cause of action. *Mar–Eco, Inc. v. T & R & Sons Towing & Recovery, Inc.*, 837 A.2d 512 (Pa.Super.2003). The trial court noted that the Trust relied solely upon Section 5322(a)(7), *as amended*, 42 Pa. C.S § 5322(a)(7), which provides for jurisdiction over a party "[a]ccepting election or appointment or exercising powers under the authority of this Commonwealth as a ... [d]irector or officer of a corporation." The Monastery asserted in the course of litigation that it was the lawful President and Chairman of the Trust as the successor in interest to the current Abbot of St. Andrew's Monastery. The trial court concluded, however, that simply taking a position in a lawsuit pending in another jurisdiction did not constitute "[a]ccepting election or appointment or exercising powers" over a Pennsylvania corporation.[2]

have the power to adopt, amend and repeal the bylaws of a nonprofit corporation." Because the Trust was to have no other members, it was implicit that the Board of Directors had the power and duty to carry on the business of the corporation, including adoption, amendment and repeal of bylaws when necessary.

Section 5731(a)(1), *as amended*, 15 Pa.C.S. § 5731(a)(1), provides that the board of directors may by resolution of a majority establish committees, which may have the authority of the board, except that no such committee shall have power or authority to do enumerated acts including to fill vacancies on the board. Therefore, a provision requiring the Chairman as a committee of one to approve actions of the Board governing an exception is an invalid grant of authority under Section 5731; a provision empowering the Chairman to nullify any change in bylaws by a majority also is invalid because a majority is required to take such action. The amendments to the Bylaws are valid and the election of Tsucalas as Chairman and President was valid. The Trust requested an order declaring that the original Bylaws of the Trust were invalid to the extent that they required that no resolution of the officers or the Board should be valid unless approved by the President and Chairman in writing, declaring that the amendments to the Bylaws of August 28, 1987 are valid, declaring that the election of Tsucalas as President and Chairman was valid and declaring that the Trust is legally represented by the Board and its President and Chairman.

2. The Court's review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court committed an error of law or abused its discretion. *In re Estate of Bartol*, 846 A.2d 209 (Pa.Cmwlth.2004). When considering preliminary objections, the Court must accept as true all well-pleaded facts set forth in the complaint and inferences

## II

■ Appellants first note that a state may exercise general in personam jurisdiction over a non-resident defendant based upon specific acts of the defendant that gave rise to the cause of action or based upon the defendant's general activity in the state. *Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110 (1992). The Long–Arm Statute enumerates ten bases for specific jurisdiction, including Section 5322(a)(7), relating to accepting election or appointment or exercising powers under the authority of this Commonwealth as a director or officer of a corporation. The Monastery asserted authority created by the offices of President and Chairman to deny Tsucalas the ability to represent the Trust in litigation. Appellants quote Black's Law Dictionary 682 (Rev. 4th ed. 1968): "To exercise a right or power is to do something which it enables the holder to do." They contend that the Monastery exercised power as a director or officer of the Trust, rendering it subject to personal jurisdiction under Section 5322(a)(7).

■ The trial court failed to consider the consequences of the Monastery's assertion of authority as it related to the Trust. At the time of Archbishop Tsoukalas' death there was no "current Abbot of St. Andrews Monastery" because St. Andrew's Monastery did not exist. The Trust is empowered to act only through its Board of Directors. Under the provision of the original Bylaws that no resolution was valid without approval of the President and Chairman in writing, in the absence of a President and Chairman no resolutions of the Board could be valid. The Monastery's challenge to the 1987 amendments to the Bylaws and its assertion of its status as President and Chairman were a direct challenge to the authori-

reasonably deducible therefrom but not con-

ty of the sitting Board of Directors to control operations of the Trust. By asserting such authority in the Greek litigation, the Monastery was able to take control of the Trust's only significant asset, the Kapandriti lot, as effectively as if it had come to Pennsylvania and asserted such authority against the Trust's Board of Directors. This action is subject to review of Pennsylvania courts.

■ Next Appellants contend that in personam jurisdiction over the Monastery is consistent with due process standards. Section 5322(b) of the Long–Arm Statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States . . . ." In *Kubik* the Supreme Court explained that the standard that must be met by a state in asserting specific jurisdiction is that the non-resident defendant must have sufficient minimum contacts with the forum state and the assertion of personal jurisdiction must comport with fair play and substantial justice, citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Minimum contacts are determined by whether the " 'defendant's conduct and [his] connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Kubik,* 532 Pa. at 17, 614 A.2d at 1114 (quoting *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542). Critical to that analysis is "the determination that the defendant purposefully directed his activities at residents of the forum and purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id.* at 18, 614 A.2d at 1114.

clusions of law. *Id.*

There has been no allegation that the Monastery was unaware that the Trust was registered in Pennsylvania. The Monastery has directed its activities against a resident of Pennsylvania, Tsucalas, and in connection with the affairs of a Pennsylvania corporation, the Trust. It has asserted the protection of Pennsylvania law by claiming in the Greek litigation that such law invalidated the amendment of the Trust's Bylaws and subsequent election of Tsucalas as President and Chairman of the Board. Therefore, the exercise of in personam jurisdiction is consistent with the Due Process Clause and the Long–Arm Statute.

■ The Monastery first asserts that, as shown in a declaration submitted in support of the preliminary objections, the Monastery has no contacts with Pennsylvania: it has not consented to general jurisdiction; it has not brought suit in Pennsylvania; it is not incorporated nor maintains a place of business here; and it owns no real property here. Further, Appellants do not allege that the Monastery caused them harm or tortious injury by an act or omission in Pennsylvania. Because of the defendant's objection, the burden is on the plaintiff to establish with reasonable particularity sufficient contacts with the forum state, *Commonwealth ex rel. Pappert v. KT&G Corp.*, 863 A.2d 1254 (Pa. Cmwlth.2004), but Appellants have raised only the allegations of the complaint.

Second, the Monastery asserts that it is not serving as a director or officer of a Pennsylvania corporation under Section 5322(a)(7). There has been no "election" or "appointment" of the Monastery as a director or officer. Its legal position is that is has been excluded as such by the Bylaw amendments. Also, it is not exercising power as a director or officer. Under the amendments to the Bylaws, the Monastery has no present authority. Appellants overstate the effect of the Greek litigation; the Monastery has not "taken control" of anything.

Last, even if jurisdiction were proper under the Long–Arm Statute, its exercise would violate the right to due process. A court determines whether a party might reasonably expect to be sued in the forum by considering whether the party acted purposefully in directing its activities at the forum state or in availing itself of the privileges of conducting activities there, invoking the benefits and protections of the forum's laws, citing *Burger King Corp.* and *Commonwealth ex rel. Pappert v. TAP Pharmaceutical Prods., Inc.*, 868 A.2d 624 (Pa.Cmwlth.2005). The Monastery contends that the evidence is not disputed that it has not directed any activities to Pennsylvania or availed itself of privileges of conducting activities here or invoked Pennsylvania law. Instead, the parties have litigated a dispute about a parcel of land in Greece that was bequeathed by a Greek archbishop to an entity that was to be established in Greece (this is contrary to the allegation of the complaint that Archbishop Tsoukalas mistakenly attempted to bequeath the Kapandriti lot to the Trust).

### III

In *Burger King Corp.* the Supreme Court explained that the Due Process Clause protects liberty interests by requiring fair warning to individuals that particular activity may subject them to the jurisdiction of a foreign sovereign and that "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at

540–541 (citations omitted). There are several reasons why a forum may exercise personal jurisdiction over a nonresident who purposefully directs his activities toward forum residents, and "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* at 473, 105 S.Ct. at 2182, 85 L.Ed.2d at 541. Although the unilateral activity of one who claims some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state, "[j]urisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475, 105 S.Ct. at 2183–2184, 85 L.Ed.2d at 542.

Appellants are correct that allegations of the complaint are sufficient to establish the minimum contacts necessary for proper personal jurisdiction. In this case the Trust is a Pennsylvania registered nonprofit corporation with its offices in Pennsylvania. The Monastery's effort to wrest the Kapandriti lot from the Trust was an action directed against a Pennsylvania resident. The action had not only speculative but also immediate effects, in that the registration of the suit effectively prevented the Trust from selling the property *if it* chose to do so. The case, however, does not involve solely a dispute over ownership of a property located elsewhere.

The Trust was operating under amended Bylaws following the death of Archbishop Tsoukalas and the 1987 amendments. The commencement of the suit on the ground that the Monastery was the successor or assign of the Abbot of St. Andrew's Monastery necessarily challenged the structure and composition of the Trust. Later, the Monastery's express challenge to the legitimacy of the 1987 amendments and to Tsucalas as President and Chairman constituted a frontal assault on the Trust's ability to function. This certainly constitutes action directed against a Pennsylvania resi-dent. Further, the Monastery's assertion of its claimed right to act as President and Chairman constitutes exercising authority as an officer of a corporation under Section 5322(a)(7). The Monastery's "legal position" is that it has such authority. Should the matter ultimately be determined in its favor, then it would have had and properly exercised such authority all along.

In *TAP Pharmaceutical Prods.*, the Court noted that if a non-resident defendant can reasonably anticipate being haled into court, the next inquiry is whether requiring it to appear in that forum is reasonable and fair. Quoting *Kubik*, the Court stated that factors to be considered include the burden on the defendant, the forum state's interest in adjudicating the dispute and the plaintiff's interest in obtaining convenient and effective relief, as well as the interests of the interstate judicial system and the shared interest of the several states. The Court concludes that Pennsylvania has a strong interest in adjudicating this dispute and determining who, under Pennsylvania law, are the officers of this Pennsylvania registered nonprofit corporation entity. Accordingly, the Court reverses the order of the trial court dismissing the Appellants' complaint and remands for further proceedings.

### ORDER

AND NOW, this 31st day of December, 2007, the order of the Court of Common Pleas of Philadelphia County dismissing the complaint file filed by John J. Tsucalas and The Memorial Holy Monastery of St. Andrew Apodimon Trust on the ground of lack of personal jurisdiction is reversed, and this matter is remanded for further proceedings.

Jurisdiction is relinquished.