# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania : <br>
Acting by Attorney General : <br>
Josh Shapiro : <br>
       : <br>
           v. :    No. 89 C.D. 2021 <br>
       :    ARGUED: March 7, 2022 <br>
Auto Equity Loans of Delaware, LLC, : <br>
               Appellant : <br>

BEFORE:   HONORABLE ANNE E. COVEY, Judge <br>
              HONORABLE CHRISTINE FIZZANO CANNON, Judge <br>
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY** <br>
**SENIOR JUDGE LEADBETTER**             **FILED: March 30, 2022**

Auto Equity Loans of Delaware, LLC (AEL) appeals from that portion of an order of the Court of Common Pleas of Philadelphia County granting a motion to compel compliance with the subpoena filed by the Commonwealth of Pennsylvania, acting by Attorney General Josh Shapiro. We affirm.

The relevant background is as follows.[1] AEL is a Delaware limited liability company that is licensed and regulated by Delaware's Office of the State Bank Commissioner. (June 4, 2021 Trial Ct. Op. at 1.) AEL provides financing to borrowers secured by motor vehicle titles as collateral. (*Id.*) Following execution of a loan agreement with a Pennsylvania borrower, AEL submits the necessary documentation to the Pennsylvania Department of Transportation (PennDOT) to

---

[1] AEL acknowledged these facts in two trial court filings. (Oct. 1, 2020 Resp. in Opp'n to Mot. to Compel at 1-2; Reproduced Record "R.R." at 27a-28a) and (Oct. 1, 2020 Br. in Reply to the Commonwealth's Br. in Opp'n to Commonwealth's Mot. to Compel at 3; R.R. at 34a).

record AEL's lien against the respective borrower's motor vehicle. (*Id*. at 2.) Should a Pennsylvania borrower default, AEL pays a third party to effect repossession of the vehicle securing the loan. (*Id*. at 9.)

The present action originated with the Commonwealth's investigation into AEL's business practices pursuant to Section 918 of The Administrative Code of 1929 (Administrative Code).[2] Pertinent here, the Commonwealth served a June 2020 subpoena on AEL requesting "information and/or copies of documents relating to all vehicle title loans [AEL] made to consumers who have resided in or had a vehicle registered in Pennsylvania during [January 1, 2016, to June 30, 2020] ('Vehicle Title Loans')." (June 25, 2020 Subpoena at 1; Reproduced Record "R.R." at 20a.) Having received no response, the Commonwealth filed an enforcement action. (Aug. 26, 2020 Mot. to Compel Compliance with Subpoena at 1-6; R.R. at

---

[2] Pursuant to Section 918 of the Administrative Code:

> The Bureau of Consumer Protection shall have the power and its duties shall be:
>
> (1) To investigate commercial and trade practices in the distribution, financing and furnishing of goods and services to or for the use of consumers in order to determine if such practices are detrimental to the public interest, and to conduct studies, investigations and research in matters affecting consumer interest, advise the executive and legislative branches on matters affecting consumer interest, assist in developing executive policies and develop draft and propose legislative programs to protect the consumer.
>
> (2) To investigate fraud, misrepresentation and deception in the sale, servicing and financing of consumer goods and products. To promote consumer education and to publicize matters relating to consumer frauds, deception and misrepresentation.

Section 918 of the Act of April 29, 1929, P.L. 177, *as amended*, added by Section 1 of the Act of December 17, 1968, P.L. 1221, 71 P.S. § 307-2.

13a-18a.) Initially granting the Commonwealth's motion to compel and directing AEL to comply, the trial court subsequently granted AEL's motion for reconsideration and vacated the prior order. In AEL's response in opposition to the Commonwealth's motion, AEL contended that the Commonwealth's service was improper and that the trial court lacked personal jurisdiction. (Oct. 1, 2020 Resp. in Opp'n to Mot. to Compel at 1-4; R.R. at 27a-30a.) The Commonwealth disagreed. (Oct. 5, 2020 Br. in Reply to Resp't's Br. in Opp'n to Mot. to Compel at 1-12; R.R. at 74a-85a.)

> Subsequently, the trial court ordered:
>
> 1. Because the subject subpoena was not served, [the Commonwealth] is granted leave of 30 days from the date this order is docketed to properly serve it and file an affidavit of service with the court; and
>
> 2. [AEL] is granted leave of 30 days from the date [the Commonwealth's] affidavit of service is docketed to produce all information and documents requested in the subject subpoena.

(Dec. 9, 2020 Trial Ct. Order at 1.)[3] AEL's appeal to this Court followed.

AEL makes three arguments in its brief to this Court. First, it complains that the trial court resolved facts in the Commonwealth's favor without holding a hearing. Next, relying on *TitleMax of Delaware, Inc. v. Weissmann*, 505 F. Supp. 3d 353 (D. Del. 2020), it claims that the Commonwealth's attempt to enforce its usury laws against it violates the dormant Commerce Clause of the United States Constitution. Finally, it argues that it was deprived of due process because it does

---

[3] After compliance with the order by the Commonwealth, the service issue is not before us on appeal.

not have sufficient minimum contacts with Pennsylvania to allow our courts to exercise personal jurisdiction over it.

We first address whether AEL preserved arguments pertaining to the trial court's failure to hold an evidentiary hearing or any dormant Commerce Clause challenge. AEL raised two issues in its concise statement of errors complained of on appeal:

> 7. [The trial] [c]ourt erred in ordering [AEL] to produce documents and information to [the Commonwealth] within 30 days of service without specifying what constitutes proper service of this Delaware-based company. [and]
>
> 8. *[The trial] [c]ourt erred in finding personal jurisdiction over Delaware-based [AEL] in ordering it to produce documents and information to [the Commonwealth] that solely arise out of or relate to its loan agreements executed outside of Pennsylvania.*

[Jan. 27, 2021 Concise Statement of Errors Complained of on Appeal at 1-3 (emphasis added).] "[A]ll issues raised in the Statement will be deemed to include every subsidiary issue contained herein which was raised in the trial court." Rule 1925(b)(4)(v) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(b)(4)(v). However, issues not raised before the trial court are waived and cannot be raised for the first time on appeal. Pa. R.A.P. 302(a).

AEL asserts that because it could not have known the trial court's rationale without the benefit of an opinion, it did not waive any issue as to the lack of an evidentiary hearing. AEL contends that prior to the opinion, there was no indication that the trial court made its decision without any evidence. This argument defies credulity, given the fact that AEL obviously knew, when it received the trial court's order, that there had been no hearing. Moreover, the court relied upon AEL's

4

undisputed assertions in determining that there was personal jurisdiction. Finally, AEL neither requested a hearing nor raised a Commerce Clause issue in its response to the motion to compel or in its brief in opposition to that motion. AEL simply argued that the Attorney General did not properly serve AEL and that, because all of the loans were made in Delaware, due process prohibited enforcement of the subpoena. Thus, the first two arguments raised here are waived.

Even if the Commerce Clause issue was properly before us, as the Commonwealth has noted in a letter post-dating the filing of the parties' briefs, the Third Circuit has overruled the district court decision relied upon by AEL. *TitleMax of Delaware, Inc. v. Weissmann*, 24 F.4th 230 (3d Cir., No. 21-1020, filed Jan. 24, 2022), *rev'g*, 505 F. Supp. 3d 353 (D. Del. 2020). Like AEL, TitleMax provides vehicle title loans to Pennsylvania borrowers, records the liens with PennDOT, and repossesses vehicles located in Pennsylvania when a Pennsylvania borrower defaults. Pursuant to the Pennsylvania Department of Banking and Securities' authority to enforce the Consumer Discount Company Act[4] and what is known as the Loan Interest and Protection Act,[5] the Department issued a subpoena to TitleMax requesting documents regarding its interactions with Pennsylvania residents. The Court of Appeals determined that applying our usury laws to an out-of-state lender did not violate the dormant Commerce Clause, noting that the Commonwealth has a strong interest in preventing usury and that any burden on interstate commerce is incidental. The Court reasoned that TitleMax's transactions with Pennsylvanians involve both loans and collections, which do not occur "wholly outside" of the Commonwealth. The transactions involve more than a simple conveyance of money

---

[4] Act of April 8, 1937, P.L. 262, *as amended*, 7 P.S. §§ 6201-6219.

[5] Act of January 30, 1974, P.L. 13, *as amended*, 41 P.S. §§ 101-605.

at a brick-and-mortar store outside of Pennsylvania because Pennsylvanians make loan payments while physically present in their home state. Under the modern approach to the territorial scope of contracts, contracts formed between citizens in different states implicate *both* states' regulatory interests such that it is irrelevant that the consumers were physically outside of Pennsylvania during the contract initiation.[6] Accordingly, the Court held that the Department's investigation did not violate the dormant Commerce Clause because the loans did not occur wholly outside of Pennsylvania. While we are not bound by opinions of the Circuit Courts, we find the analysis in *TitleMax* to be persuasive.

Turning to the issue on appeal, "[a] Pennsylvania court may exercise either general or specific personal jurisdiction over an out-of-state defendant." *City of Phila. v. Borough of Westville*, 93 A.3d 530, 532 (Pa. Cmwlth. 2014). At issue here is specific personal jurisdiction,[7] which arises out of a defendant's specific contacts with the forum state. Section 5301(a)(1) of the Judicial Code, 42 Pa. C.S. § 5301(a)(1) ("Long-Arm Statute"). Section 5322(a)(1) of the Judicial Code permits specific jurisdiction over a non-resident defendant "who acts directly or by an agent, as to the cause of action or other matter arising from such person . . . [t]ransacting any business in" Pennsylvania. 42 Pa. C.S. § 5322(a)(1). The focus is on the defendant's particular acts that gave rise to the underlying cause of action. *Commonwealth ex rel. Pappert v. TAP Pharms. Prods., Inc.*, 868 A.2d 624, 629 (Pa. Cmwlth. 2005). Such a defendant must have "purposefully directed his activities at residents of the forum and purposefully availed himself of the privilege of

---

[6] Under the traditional approach, a contract was made in the state where the offer was accepted. *See TitleMax*, 24 F.4th at 239 n.9.

[7] Section 5301(a)(2)(iii) of the Judicial Code permits general jurisdiction over a non-resident corporation if it carries on a continuous and systematic part of its general business within the Commonwealth. 42 Pa.C.S. § 5301(a)(2)(iii).

6

conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Tsucalas v. Holy Xenophone Monastery*, 939 A.2d 1008, 1013 (Pa. Cmwlth. 2007) (citation omitted). "[T]o meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum." *Gen. Motors Acceptance Corp. v. Keller*, 737 A.2d 279, 281 (Pa. Super. 1999) (citation omitted). "[M]inimum contacts make[] jurisdiction presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 324 (3d Cir. 2007). In addition, "maintenance of suit against a non-resident defendant must not offend traditional notions of 'fair play and substantial justice.'" *Kenny v. Alexson Equip. Co.*, 432 A.2d 974, 980 (Pa. 1981). A defendant attempting to establish the absence of those notions carries a heavy burden. *O'Connor*, 496 F.3d at 324.

In the present case, the trial court considered the following factors in determining that the criteria for specific jurisdiction were satisfied. AEL (1) made vehicle title loans to Pennsylvanians for vehicles registered in the state; (2) placed liens on their vehicles with PennDOT; (3) repossessed vehicles from Pennsylvanians in Pennsylvania; (4) sold those repossessed vehicles at motor vehicle auctions in the state; and (5) collected payments from Pennsylvanians. (Trial Ct. Op. at 9.) As noted, AEL did not dispute these baseline facts.

As the Third Circuit held in *TitleMax*, it is irrelevant that Pennsylvania consumers were physically outside of their state when initiating the title loan transactions because contracts formed between citizens in different states implicate

7

both states' regulatory interests. The Third Circuit also observed that Pennsylvanians make loan payments while physically present in their home state.

As for AEL's lack of physical presence in the Commonwealth, the United States Supreme Court has held that "[i]t is settled law that a business need not have a physical presence in a State to satisfy the demands of due process." *South Dakota v. Wayfair*, 585 U.S. ___, ___, 138 S. Ct. 2080, 2093 (2018). Due process requirements are satisfied "irrespective of a corporation's lack of physical presence in the [] State." *Id*. at ___, 138 S. Ct. at 2093. The Court has emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) [quoting *Travelers Health Ass'n v. Va.*, 339 U.S. 643, 647 (1950)]. In that regard, the Pennsylvania Supreme Court has held that lending money to Pennsylvanians constitutes "doing business" within our state for purposes of subjecting a foreign company to our laws. *Cash Am. Net of Nev., LLC v. Dep't of Banking*, 8 A.3d 282, 284 (Pa. 2010).

Moreover, by hiring a company to repossess Pennsylvanians' vehicles, thereby using our highways and infrastructure, and by registering liens with PennDOT, AEL purposefully availed itself of the privilege of conducting activities within our state and invoked the benefits and protections of our laws. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1956) (there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). Consequently, the criteria for personal jurisdiction have been met.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
Acting by Attorney General     :
Josh Shapiro     :
    :
         v.     :    No. 89 C.D. 2021
    :
Auto Equity Loans of Delaware, LLC,     :
                Appellant     :

# O R D E R

AND NOW, this 30th day of March, 2022, the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.

 

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita