639 So.2d 163 (1994)
Keith McCOY, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2274.
District Court of Appeal of Florida, First District.
July 5, 1994.
Rehearing Denied August 9, 1994.
Robert Stuart Willis of Willis, Bliss & Ferebee, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of an order which denied his motion to suppress certain documents seized during a search of his cell while he was being held in detention pending trial, and subsequently used against him at trial. Because we conclude that the search and resulting seizure violated Fourth Amendment rights retained by appellant notwithstanding his status as a pretrial detainee, we reverse.
On December 9, 1988, appellant was arrested, pursuant to a warrant charging armed robbery. An information was subsequently filed charging two counts of aggravated assault, in addition to armed robbery. Approximately three weeks later, an amended information was filed, adding two counts of possession of a firearm by a convicted felon. Approximately a month after the amended information had been filed, a second amended information was filed, deleting the two counts of aggravated assault and substituting in their place two counts of attempted first-degree murder of a law enforcement officer. Appellant's first trial ended when a mistrial was declared on procedural grounds. Appellant's second trial also ended with the declaration of a mistrial, this time because the jury was unable to reach a verdict. After his third trial, appellant was convicted of one count of attempted first-degree murder of a law enforcement officer, one count of aggravated assault with a firearm on a law enforcement officer and armed robbery. However, on appeal of his convictions, this court reversed and remanded for a fourth trial. McCoy v. State, 580 So.2d 181 *164 (Fla. 1st DCA 1991). In due course after this court's mandate had issued, the case was again set for trial.
Literally on the eve of the scheduled trial date, the assistant state attorney assigned to the case and a Jacksonville police officer acting under the former's direction went to appellant's cell at the local pretrial detention facility. There, pursuant to instructions from the assistant state attorney, the officer first removed appellant and his cellmate, and then conducted a search of the cell, looking for writings authored by appellant which might contain incriminating statements.
At the hearing subsequently held on appellant's motion to suppress documents seized as a result of the search, the police officer testified that, as he searched the cell, the assistant state attorney stood in the door. According to the officer, he "found a table or a platform that contained a lot of depositions, it contained other materials that appeared to be transcripts, offense reports, and personal notes." The officer seized copies of depositions of four state witnesses, which consisted of some seventy pages and included copious handwritten notes, and a letter. It was conceded that no probable cause existed for the search, and that the sole purpose of the search had been to try to find incriminating statements made by appellant. During argument directed to the motion, the assistant state attorney conceded, further, that the search had been carried out on his order, and that it had nothing whatsoever to do with any security concern related to the detention facility; rather, the search had been motivated exclusively by the hope that incriminating statements might be found. The assistant state attorney argued that the search and resulting seizure were not improper because, having been incarcerated pending trial, appellant was entitled to no protection under the Fourth Amendment.
The trial court agreed with the argument made by the assistant state attorney, and denied the motion to suppress. At the ensuing trial (after the information had been amended two additional times), appellant's objection having been overruled, the state presented the testimony of a handwriting expert, who identified many of the handwritten notes on the seized depositions as having been made by appellant. Those notes, several of which were incriminating, were then admitted into evidence. The jury returned verdicts finding appellant guilty of armed robbery with a firearm (as charged) and assault with a firearm on a law enforcement officer (a lesser-included offense of attempted first-degree murder of a law enforcement officer); and not guilty of shooting into an occupied vehicle. The trial court denied appellant's motion for new trial, and entered judgment according to the jury's verdict. This appeal followed.
On appeal, appellant argues that the search of his cell while he was detained pending trial violated his right, under the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures; and his right, under the Sixth Amendment to the United States Constitution, to the assistance of counsel. The state responds that, because of his incarceration, appellant had no right to any of the protections afforded by the Fourth Amendment; and that appellant failed to carry his burden of establishing that any of the documents seized included attorney-client communications, thereby defeating any Sixth Amendment claim. We agree that appellant failed to present any evidence to establish that any of the documents seized included attorney-client communications. Accordingly, we find it unnecessary to devote any further discussion to appellant's Sixth Amendment argument. However, we are unable to accept the state's argument that, on the facts of this case, appellant had no right to rely upon the Fourth Amendment's protection against unreasonable searches and seizures.
Regarding the Fourth Amendment issue, the state relies principally upon the decision in Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Of course, to the extent applicable, we are obliged to follow decisions of the United States Supreme Court. However, we conclude that Hudson is distinguishable, and that it was not intended by the Court to apply to situations such as that presented by the facts of this case.
Hudson involved a civil action, pursuant to title 42, United States Code, section 1983, *165 brought by an inmate in the Virginia correctional system, seeking damages from a correctional officer. Among other things, the inmate had alleged that the officer had conducted a "shakedown" search of the inmate's locker and cell for contraband solely for the purpose of harassing the inmate. The Court "granted certiorari ... to decide whether a prison inmate has a reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures." 468 U.S. at 519, 104 S.Ct. at 3196. Recognizing the exceptionally difficult task assigned to prison administrators, and the institutional objectives of prison facilities, principal among which is the need to ensure internal security to guarantee the safety of both the inmates and the employees, the Court said:
A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.
Id. at 527-28, 104 S.Ct. at 3201 (footnote omitted). Based upon a clearly articulated concern that prison administrators be able to take whatever actions might be reasonably necessary to ensure security and order, the Court held "that the Fourth Amendment has no applicability to a prison cell." Id. at 536, 104 S.Ct. at 3204-05.
The Court did not, in Hudson, state that its holding applied to pretrial detainees, as well as to convicted inmates. This is of some importance because it cited with approval its decision some five years earlier in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in which it had assumed for purposes of argument (but found it unnecessary to decide) that, while necessarily diminished because of the responsibility of administrators effectively to manage detention facilities to ensure security and order, pretrial detainees continued to retain some expectation of privacy. Also of note in this regard is the Court's decision, announced on the same day as that in Hudson, in Block v. Rutherford, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).
In Block, pretrial detainees at the Los Angeles County Central Jail had filed a class action, pursuant to title 42, United States Code, sections 1983 and 1985, "challenging various policies and practices of the jail and conditions of their confinement," including the "practice of permitting irregularly scheduled shakedown searches of individual cells in the absence of the cell occupants." 468 U.S. at 578, 104 S.Ct. at 3228. Noting that "[t]he principles articulated in [Bell v.] Wolfish govern[ed] resolution of th[e] case" (id. at 585, 104 S.Ct. at 3232), the Court concluded that "[t]he security concerns that we held justified the same restriction in Wolfish ... are no less compelling here." Id. at 591, 104 S.Ct. at 3235. (footnote omitted). Reversing the decision of the court of appeals which had held that conducting the "shakedown" searches of cells in the absence of the occupants had violated the detainees' due process rights under the Fourteenth Amendment, the Court said, "We reaffirm that `proper deference to the informed discretion of prison authorities demands that they, and not the courts, make the difficult judgments which reconcile conflicting claims affecting the security of the institution, the welfare of the prison staff, and the property rights of the detainees.'" Id. (footnote omitted).
Based upon the preceding analysis, we conclude that, in Hudson, the Court did not intend to deprive pretrial detainees of all Fourth Amendment protections. Noting that it was unclear whether the Court intended its holding in Hudson to extend to pretrial detainees, one leading commentator has said that "[i]t would be most unfortunate if Hudson were extended so as to deprive pretrial detainees, as yet not convicted of the crimes alleged, of all privacy and possessory rights in their effects." 4 Wayne R. LaFave, Search and Seizure § 10.9(a), at 109 (1987). Some courts have concluded that the holding was not intended to apply to pretrial detainees, who retain some Fourth Amendment protections. E.g., United States v. Reece, 797 F. Supp. 843, 846 (D.Colo. 1992). However, others have reached the opposite conclusion. *166 E.g., State v. Martin, 322 N.C. 229, 367 S.E.2d 618, 621 (1988).
We conclude, further, that, in Hudson, the Court did not intend its holding to extend to searches such as that conducted in this case, which are not initiated by institutional personnel and are not even colorably motivated by concerns about institutional security. In this regard, we find persuasive the reasoning in United States v. Cohen, 796 F.2d 20 (2d Cir.), cert. denied, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986), and 479 U.S. 1055, 107 S.Ct. 932, 93 L.Ed.2d 982 (1987), a case in which the relevant facts are very similar to those here.
In Cohen, the appellant, a pretrial detainee unable to make bond, remained incarcerated while a number of superseding indictments were filed. The assistant United States attorney assigned to the case directed a correctional officer to search the appellant's cell "`for certain types of documents that may have contained the names and phone numbers of other of [the appellant's] co-conspirators and witnesses who [sic] [the appellant] had already contacted and was still in the process of trying to contact.'" Id. at 21. Based upon the papers found and seized during this warrantless search, the next day the prosecution sought and obtained a warrant to search the appellant's cell for "`written non-legal materials belonging to [the appellant].'" Id. Pursuant to the warrant, "numerous sheets of paper" were seized, including "witness lists, notes on specific charges, personal matters, notes on conversations between [the appellant] and his attorneys, and a sheet of paper on which the government contended [the appellant] was practicing to disguise his handwriting." Id. The trial court suppressed some of the documents on Sixth Amendment grounds, but otherwise denied the motion to suppress, refusing to hold that the initial search violated the Fourth Amendment.
On appeal, the government argued that the Hudson decision stood for the proposition "that a pre-trial detainee retains no Fourth Amendment rights, regardless of the circumstances underlying the search." Id. at 23. The court noted that it was clear that the search had been initiated by the prosecution, not by authorities connected with the detention facility; and that it had not even colorably been motivated by concerns about institutional security. It concluded that, in Hudson, the Court had intended that the Fourth Amendment rights of inmates be forfeited only in favor of "the legitimate needs of institutional security" (emphasis in original); and that the Court had "not contemplate[d] a cell search intended solely to bolster the prosecution's case against a pre-trial detainee awaiting his day in court." Id. In the court's view, the Hudson decision had not been intended to apply in such circumstances. Accordingly, the court held that, "[b]ecause [the appellant's] effects were searched at the instigation of non-prison officials for non-institutional security related reasons," the appellant might challenge the search and resulting seizure on Fourth Amendment grounds (id. at 24); and reversed. Other courts have, likewise, found the Cohen court's reasoning persuasive. E.g., People v. Hardy, 2 Cal.4th 86, 5 Cal. Rptr.2d 796, 825 P.2d 781 (1992); Lowe v. State, 203 Ga. App. 277, 416 S.E.2d 750 (1992). See also 4 Wayne R. LaFave, Search and Seizure § 10.9(a), at 17 (Supp. 1994) ("if a pretrial detainee was subjected to a cell search not `even colorably motivated by institutional security concerns,' then surely Hudson should not be treated as foreclosing challenge of that search," citing Cohen).
The state also cites Kight v. State, 512 So.2d 922 (Fla. 1987), in support of its position. However, we conclude that Kight is, likewise, distinguishable and, therefore, inapplicable. In Kight, the court recognized that the appellant, a pretrial detainee, retained some reasonable, although diminished, expectation of privacy respecting his cell. Id. at 927. However, the court concluded that the appellant "could not have reasonably expected to have exclusive control over the clothing on his person" once arrested and placed in detention because the "clothing could have been seized for legitimate health or security purposes at any time during his detention." Id. Therefore, the court held that seizure of the appellant's clothing did not violate the Fourth Amendment. Unlike the situation in Kight, we cannot conceive of any "legitimate *167 health or security purpose[]" which might have justified seizure of the documents involved in this case.
It is undisputed that the search of appellant's cell was ordered by the assistant state attorney prosecuting this case, rather than by officials connected with the detention facility; and that it was carried out by a police officer in the presence of the assistant state attorney, rather than by employees of the detention facility. It is, further, undisputed that the search was conducted solely in the hope that it might uncover incriminating writings which could be used against appellant at trial, rather than out of any concern regarding either the security or the order of the detention facility. Accordingly, based upon the preceding analysis and discussion, we conclude that appellant had a legitimate expectation that he would be protected from such a search under the Fourth Amendment; that the search was unreasonable; and that, therefore, the Fourth Amendment was violated.
At oral argument, the state contended for the first time that, even if the search had violated appellant's rights under the Fourth Amendment, the trial court's denial of appellant's motion to suppress was harmless error. We "cannot say beyond a reasonable doubt that the error did not affect the verdict." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). On the contrary, it appears to us quite possible that it did. Accordingly, we are unable to say that the error was harmless.
Appellant's convictions are reversed, and the case is remanded for a new trial. In light of this disposition, we find it unnecessary to address appellant's remaining point on appeal.
REVERSED and REMANDED, with directions.
KAHN and DAVIS, JJ., concur.