693 So.2d 583 (1997)
STATE of Florida, Appellant,
v.
Oscar Ray BOLIN, Appellee.
Nos. 95-03172, 95-03173.
District Court of Appeal of Florida, Second District.
February 14, 1997.
Rehearing Denied March 31, 1997.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Douglas S. Connor, Assistant Public Defender, Bartow, for Appellee.
PARKER, Judge.
The State of Florida appeals the trial court's order granting Oscar Ray Bolin's motion in limine which prevents the state from introducing Bolin's previous trial testimony and granting Bolin's motion to suppress evidence. We affirm the order granting the motion in limine without discussion based on the reasoning in Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); however, we reverse the order suppressing evidence.
In 1990, Bolin was indicted for two first-degree murders, one naming Natalie Holley *584 as the victim, and one naming Stephanie Collins as the victim. The supreme court reversed the convictions in both cases, holding that Bolin had not waived his spousal privilege; therefore, his former wife's testimony was inadmissible to the extent that it was based on privileged communications. See Bolin v. State, 642 So.2d 540, 541 (Fla. 1994). The supreme court further concluded that the former wife's observations of incriminating evidence were admissible in a new trial. See Bolin v. State, 650 So.2d 21, 23 (Fla.1995). The supreme court left open the possibility that the former wife's testimony could be admissible if a letter found in Bolin's jail cell waived the spousal privilege. Id. at 24. That letter is the evidence that the trial court suppressed in this case, because the trial court reasoned that the letter was obtained illegally.
At the suppression hearing, the following evidence was adduced. In June 1991, Bolin was awaiting trial in the Hillsborough County Jail for these two homicides. Major Terry of the Hillsborough County Sheriff's Office was the chief investigator on both homicides and was assisted by Corporal Baker. Part of the investigations took place in Ohio where Bolin was imprisoned. During the course of these investigations, Major Terry had personal contact with Bolin. Bolin was not hostile toward law enforcement officers and accepted their role in the investigations. At one point, Bolin sent a request through the jail to see Major Terry. The public defender advised Major Terry that Bolin would not be permitted to speak with him.
While Bolin was in the Hillsborough County Jail in 1991, he was classified as a severe escape risk and danger to himself and others. Bolin was classified as a severe escape risk because he had been charged with murder, and because he had attempted to escape while incarcerated in Ohio. During this attempted escape, Bolin hit a detention correctional officer with a piece of metal. Additionally, during Bolin's detention in the Hillsborough County Jail, there was evidence that Bolin plotted with his girlfriend and another inmate to kidnap members of Major Terry's family, Corporal Baker's family, the sheriff's family, and a judge's family. The alleged plan was to take the family members out-of-state and hold them for ransom in exchange for Bolin's release. After discovery of the plan, Bolin was placed in a one-man cell with an officer located outside of the cell door watching Bolin twenty-four hours a day.
Whenever Bolin was removed from his cell, he was shackled, handcuffed, and his activities severely restricted. To identify possible escape contraband, at least once or twice every eight-hour shift, jail personnel searched Bolin's cell. During the search, Bolin was removed from his cell, and an officer searched the cell, replaced Bolin's linens and bed materials, and searched all of the materials in the cell.
At 7:00 a.m. on June 22, 1991, Lieutenant Rivers of the sheriff's office was notified that Bolin was observed in physical distress. The nurses and jail personnel continued to constantly monitor Bolin's condition. At 11:20 a.m., Lieutenant Rivers entered Bolin's cell and found Bolin lying on the floor and found a cardboard box on the commode. Bolin usually kept this box on the floor next to the bed. Lieutenant Rivers had the jail personnel take Bolin to the infirmary to receive medical attention. While in Bolin's cell, Lieutenant Rivers observed an envelope lying on top of the box on the commode. It was face-up and addressed to Major Terry. When he picked up the envelope, a paper inside the envelope fell out. Lieutenant Rivers read the first sentence or paragraph, and, believing the letter to be a suicide note, he placed the letter back into the envelope and laid it back on the box.
In 1991, Major Terry was a Bureau Commander in criminal investigations and, in that capacity, routinely investigated suicides or attempted suicides in the jail. Major Terry would conduct an investigation at the jail if the suicide was successful or if an attempted suicide resulted in major injuries. On June 22, 1991, in response to a notification that Bolin had attempted suicide, Major Terry went to the jail. Corporal Baker met Major Terry at the jail. The officers went to Bolin's cell. By this time Bolin had been transported to the hospital, where it had been determined that he had attempted suicide.
*585 As soon as Major Terry was notified of the attempted suicide, he gave instructions for Bolin's cell to be sealed. When Major Terry and Corporal Baker entered Bolin's cell, they observed a cardboard box on Bolin's commode, with an envelope on top of the box. After the cell was photographed, Major Terry picked up the envelope and opened it in the presence of Corporal Baker. The envelope had a stamp on it and it was addressed to Major Terry. At the time Major Terry picked up the letter, he believed that it might be a suicide note. In Major Terry's opinion, the contents of the letter added significant information to the homicide investigations. After reading the letter, Major Terry handed the letter to Corporal Baker for proper disposition.
We agree with the state's argument that the trial court erred in suppressing the suicide note found in plain view in Bolin's jail cell after the attempted suicide. We conclude that the trial court erred in relying upon McCoy v. State, 639 So.2d 163 (Fla. 1st DCA 1994), to support its position that there was no "legitimate" need to search Bolin's jail cell and that the only reason the search took place was to help bolster the state's case against him.
In McCoy, the assistant state attorney assigned to the case directed the police to perform a search of McCoy's cell at a local pretrial detention facility for the sole purpose of finding any writings by McCoy which would be incriminating. McCoy moved to suppress some writings based on his right to be free of unreasonable searches and seizures and his right to the assistance of counsel. The state responded that he was not entitled to the protections of the Fourth Amendment based on Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Further, the state argued that McCoy failed to carry his burden of showing that the documents contained any privileged attorney-client information. The First District agreed that McCoy failed to carry his burden as to his Sixth Amendment right to assistance of counsel; however, the court found that Hudson did not apply because the search was not done in furtherance of any concern for institutional security and that the search was done solely to bolster the state's case. McCoy, 639 So.2d at 167.
In Hudson, the Supreme Court held that a prison inmate did not have a reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable search and seizures. Hudson, 468 U.S. at 536, 104 S.Ct. at 3205. The First District in McCoy did not believe that the Hudson rule applied to pretrial detainees even though it noted that jurisdictions are in conflict on this issue.
We conclude that there is nothing in Hudson that would support the First District's determination that Hudson does not apply to pretrial detainees. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (court upheld a room search rule against a Fourth Amendment challenge by pretrial detainees). Florida case law supports the fact that a reasonable person in custody would not have an expectation of privacy. See State v. Smith, 641 So.2d 849, 851 (Fla.1994).
Further, this case can be distinguished from McCoy because the officer was called to the jail to investigate an attempted suicide by Bolin. The officer did not come to the cell simply to find evidence that would bolster its case as the assistant state attorney did in McCoy. The letter, which was addressed to Major Terry, was in plain view and was evidence of the attempted suicide. Additionally, the letter does not contain any attorney-client information which would implicate the Sixth Amendment.
We affirm the trial court's order granting Bolin's motion in limine. We reverse the trial court's order granting Bolin's motion to suppress.
CAMPBELL, A.C.J., and DAKAN, STEPHEN L., Associate Judge, concur.