IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. KUEK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT,

V.

NYIR G. KUEK, APPELLEE.

Filed August 17, 2021.    No. A-21-465.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Reversed and remanded for further proceedings.

Donald W. Klein, Douglas County Attorney, and Amy G. Jacobsen for appellant.

Thomas C. Riley, Douglas County Public Defender, for appellee.

WELCH, Judge.

## INTRODUCTION

The State appeals the order of the Douglas County District Court granting the motion to suppress filed by Nyir G. Kuek, a pretrial detainee jailed at the Douglas County Department of Corrections (DCDC). For the reasons set forth herein, I reverse and remand for further proceedings.

## STATEMENT OF FACTS

In August 2019, Kuek was charged by information with two counts of first degree murder, two counts of use of a firearm to commit a felony, and possession of a deadly weapon by a prohibited person. Thereafter, the information was amended to add two additional counts of tampering with a witness or informant.

Kuek filed a motion to suppress the October 27, 2020, search of his jail cell at the DCDC alleging that the search was unconstitutional because (1) the search warrant authorized a general

search and did not specify with particularity the items law enforcement believed to be located inside the cell to be searched; (2) "police conducted a general search and exceeded the authority granted in the search warrant"; (3) the affidavit in support of the search warrant did not set forth sufficient probable cause to believe that specific items of an evidentiary nature related to a criminal offense were located inside the cell to be searched; and (4) the search warrant and affidavit in support thereof did not state with particularity the items to be seized. At the April 2021 suppression hearing, the court allowed Kuek to add an additional ground for suppression--that the search of Kuek's cell preceded the court-authorized search warrant.

During the suppression hearing, the State called one witness to testify--David Preston, the detective assigned to the investigation of Kuek. Preston testified that, on October 27, 2020, he sought a search warrant to search Kuek's cell. Prior to getting the search warrant, Preston talked to Sergeant Kristin Banning at DCDC to confirm the name of Kuek's cellmate and informed her that he would be obtaining a search warrant for papers in Kuek's cell that related to witness tampering. Preston testified that it was normal procedure to include the cellmate of the subject in the warrant "so that you can have a more thorough exercising of the warrant. And a lot of times in these cells, from my understanding, it's not a very large area, so it would be hard to determine whose items are [whose]." Preston advised Banning that he was "only looking for paper documents, letters, notes, [and] things of that nature." He also asked Banning what the procedure or process was for a search warrant after which Banning advised him that

> she would check multiple cells in addition to . . . Kuek's cell because this was normal procedure for them to just randomly check cells. So they would check -- I believe they did three cells that day, . . . [Kuek's] cell being one of those, and it was just to make it look like they were doing normal procedures.

Preston testified that he did not direct Banning to actually search Kuek's cell to find needed items; he just told her to seize everything that would be covered by the search warrant which was paperwork. According to Preston,

> [my] understanding was that in the past, this was a procedure that had been conducted between the Omaha Police Department and Douglas County Corrections when executing this type of warrant, and part of the reason for that was to prevent, like, any potential information or whatever . . . our warrant would cover being destroyed or anything like that. So more or less, representatives of Douglas County Corrections were more or less detaining and protecting and not so much actually searching. And because it was in a controlled inmate populated area, that we as officers were not permitted to go into that area ourselves.

Preston testified that it was his understanding that one of the normal jail procedures was to perform searches to look for contraband. Preston also acknowledged that it was his understanding that Banning was going to check Kuek's cell prior to his obtaining the search warrant.

After Preston's conversation with Banning, he obtained a search warrant for the search of Kuek's cell. The affidavit and application for a search warrant and the search warrant were received into evidence. The October 27, 2020, affidavit in support of obtaining the search warrant provided, in part:

On October 16, 2020[,] . . . Preston . . . conducted an interview with [a named] inmate . . . who advised that KEUK . . . had confided in him that KEUK was conspiring to kill FANT, Eric to prevent FANT from testifying in KUEK's homicide trial that was scheduled to being at the beginning of November 2020.

[Preston] conducted follow up on the information that was provided by [the named inmate] and discovered that KUEK was relaying information about FANT . . . over the jail phone calls to parties that were not incarcerated. KUEK would often speak in the Nuer language in the attempt to prevent investigating officer from understanding what he was talking about.

[Preston] also intercepted information over the jail phone calls that KUEK was attempting to mail out letters containing information on FANT . . . and that KUEK was receiving mail through other inmates [sic] data numbers that contained information on FANT. . . .

On October 27, 2020[, Preston] contacted Sergeant BANNING . . . of Douglas County Corrections to inquire about the cellmate of KUEK. Banning advised that KEUK was currently cell mates with PERRY. . . .

[Preston] has had past experience with inmates communicating with outside parties through mailed letters instead of communicating via telephone as the inmates are aware that their phone calls are recorded and monitored. [Preston] has reason to believe and does believe that . . . KUEK . . . is attempting to conspire to tamper with a witness and that KUEK . . . is communicating with parties both inside and outside of Douglas County Corrections to prevent witness FANT . . . from testifying to the homicides [with which Kuek is charged. Preston] further believes that KUEK . . . is communicating via letters sent and received by posted mail as well as through written communication within the jail.

The affidavit in support of a search warrant also advised that "said property is under the control or custody of . . . BANNING within the [DCDC]." The Douglas County Court granted the search warrant the same day authorizing the search and seizure of:

1. Any received mail in the possession of KUEK . . . or found within the housing unit and/or cell occupied by KUEK . . . .

2. Any and all items of paper bearing printed and/or handwritten words or numbers in the form of notes, lyrics, letters, envelopes, journals, kites, books etc. which are in the possession of KUEK . . . or found within the housing unit and/or cell occupied by KUEK . . . .

The search warrant also authorized the search and seizure of any of the aforementioned items in the possession of Kuek's cellmate or found within the housing unit and/or cell occupied by Kuek's cellmate.

Banning removed items from Kuek's cell approximately a half hour before Preston arrived at the DCDC with the search warrant. Preston testified that it was his understanding that this procedure was to prevent anyone from tampering with the evidence while the search was being conducted. Upon arriving at DCDC, Preston obtained the items that had been taken from Kuek's

cell. Preston testified that, as far as he was concerned, the search warrant was for the purpose of being able to take the seized items from Banning. Preston explained:

> My understanding was that this would be similar to . . . where we would be preparing to search a residence, where maybe we have done some type of protective sweep and then we hold the residence while the warrant is being drafted. And then after that point, we then do our search. We hold a residence like that to prevent the destruction or tampering with any potential evidence that could be collected during the execution of the warrant.

> So my understanding is that this process was conducted in this way to prevent the tampering or obstruction of any potential evidence while we were . . . getting our warrant processed, executed and completed.

Preston also testified that "in my experience as an investigator, I've held property or held residences or vehicles waiting for a warrant to be signed by a judge. I've never . . . had that be an issue in the past." After obtaining the seized items from Banning, Preston and another detective processed those documents retaining those that they "thought potentially [were] pertinent to [their] investigation" regarding witness tampering and returning approximately 80 percent of the documents to Kuek.

In an order dated June 3, 2021, the district court granted Kuek's motion to suppress. Specifically, the district court held:

> Here you have a warrantless search initiated by a non-correctional official (Det. Preston) for non-correctional security related reasons. Had [DCDC] officials initiated the search of . . . Kuek's cell then . . . Kuek, regardless of his pre-trial detainee status, would not have a constitutional challenge. United States v. Cohen, 796 F.2d 20, 24 (2nd Cir. 1986).

> In addition, [Kuek's] cell was searched and his papers seized before the search warrant was obtained. [Further,] upon examination of the Application and Affidavit to obtain the warrant it is not explicitly stated therein that . . . Preston had already directed . . . Banning to enter [Kuek's] cell and seize . . . Kuek's items. There is evidence in the record that [Kuek] and his cellmates were removed from the jail cell prior to the warrantless search but no evidence in the record as to why the [DCDC] correctional officers could not have waited until . . . Preston obtained the warrant . . . before conducting their search.

> Moreover, it is clear that the [DCDC] correctional officers did not conduct the warrantless search for any institutional security reasons but that the search was conducted for the purpose of discovering information that could lead to additional charges being filed against [Kuek]. And those additional charges were filed shortly after the search was conducted. This Court cannot stand by and allow the State to use the fruits of this search.

The State has timely appealed to one judge of this court pursuant to Neb. Rev. Stat. § 29-824 (Reissue 2016).

ASSIGNMENTS OF ERROR

The State contends that the district court erred in finding that Kuek had a reasonable expectation of privacy in his jail cell, in finding that the search was conducted in the absence of a valid search warrant, and in applying the exclusionary rule.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Bray,* 297 Neb. 916, 902 N.W.2d 98 (2017). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Bray, supra.*

ANALYSIS

The State argues that the district court erred in granting Kuek's motion to suppress evidence obtained from his cell because either Kuek did not have a reasonable expectation of privacy in his jail cell such that the DCDC seizure of items from his cell did not violate the Fourth Amendment, or that, even if there was a violation, the exclusionary rule should not be applied to suppress evidence discovered during that search.

The framework for this analysis was articulated by the Nebraska Supreme Court in *State v. Jenkins*, 294 Neb. 684, 694-95, 884 N.W.2d 429, 439 (2016):

> Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. These constitutional provisions do not protect citizens from all governmental intrusion, but only from unreasonable intrusions. Here, the threshold question is whether the State's acquisition of [the defendant's] cell phone records amounted to a search or seizure under the U.S. and Nebraska Constitutions. [The defendant] does not argue that Nebraska's constitutional provisions impose any higher standard than the Fourth Amendment, and we analyze her claims under familiar Fourth Amendment principles.

> The Fourth Amendment's protections are implicated whenever state action intrudes on a citizen's reasonable expectation of privacy. Determining whether a reasonable expectation of privacy exists normally involves answering two inquiries: first, whether the individual has exhibited an actual (subjective) expectation of privacy, and, second, whether the individual's expectation is one that society is prepared to recognize as "reasonable." As such, for purposes of the Fourth Amendment, a "search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."

Similar to the framework set forth in *Jenkins*, the threshold question here is whether the State's acquisition of certain documents from Kuek's jail cell amounted to a search and seizure under the Fourth Amendment. Because Kuek does not argue that Nebraska's Constitution imposes a higher standard than the Fourth Amendment, we analyze his claims under familiar Fourth

Amendment principles. As to those principles, the State urges this specific issue was resolved by the U.S. Supreme Court in *Hudson v. Palmer*, 468 U.S. 517, 525-26, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), wherein the Court held:

> Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

Although the State urges the Supreme Court's explicit statement on privacy rights in prison cells dictates the outcome here, Kuek seeks to differentiate *Hudson* as applying to convicted prisoners and urges a different rule should apply to pretrial detainees when the search does not directly implicate issues of institutional security. In furtherance of this position, Kuek argues that the U.S. Supreme Court in *Hudson* fashioned the "no legitimate expectation of privacy . . . in prison cells" rule because of the need for institutional security in jails. *Hudson v. Palmer*, 468 U.S. at 530. Kuek argues that where, as here, the defendant is a pretrial detainee and the purpose of the search is to uncover additional evidence which does not involve issues of institutional security, a different rule should apply.

Kuek derives his argument from the Second Circuit Court of Appeals decision in *United States v. Cohen*, 796 F.2d 20 (1986). In *Cohen*, the police conducted what they branded a "contraband" search of the defendant's cell which consisted of an examination of the defendant's papers. The Assistant U.S. Attorney acknowledged that the purpose of the search was to review the defendant's documents and potentially locate additional evidence of co-conspirators and witnesses governing the incident for which the defendant had been charged. The defendant was a pretrial detainee. Police then relied upon information discovered in the initial warrantless search to obtain a warrant to search additional documents from the defendant's cell. After reviewing the U.S. Supreme Court's holding in *Hudson*, the Second Circuit found the holding in *Hudson* was "bottomed" in the need for "'close and continued surveillance of inmates and their cells required to ensure institutional security and internal order.'" *United States v. Cohen*, 796 F.2d at 22. As a result, the Second Circuit ultimately concluded:

> In this case it is plain that no institutional need is being served. Were it a prison official that initiated the search of [the pretrial detainee's] cell, established decisional law holds that the search would not be subject to constitutional challenge, regardless of whether security needs could justify it. But here the search was initiated by the prosecution solely to obtain information for a superseding indictment. In our view, this kind of warrantless search of a prisoner's cell falls well outside the rationale of the decided cases. [The pretrial detainee] retains a Fourth Amendment right--though much diminished in scope--tangible enough to mount the attack on this warrantless search.

*United States v. Cohen*, 796 F.2d at 24.

In the present case, the district court found the holding in *Cohen* persuasive, finding:

> In the instant case, this Court believes that the facts at bar are similar enough in nature to the facts in <u>Cohen</u> to justify the adoption of the <u>Cohen</u> analysis. Here you have a warrantless search initiated by a non-correctional office (Det. Preston) for non-correctional security related reasons. Had [DCDC] officials initiated the search of . . . Kuek's cell then . . . Kuek, regardless of his [pretrial] detainee status, would not have a constitutional challenge. <u>United States v. Cohen</u>, 796 F.2d 20, 24 (2nd Cir. 1986).

> In addition, [Kuek's] cell was searched and his papers seized before the warrant was obtained. [Further,] upon examination of the Application and Affidavit to obtain the warrant it is not explicitly stated therein that Detective Preston had already directed [DCDC] Sgt. Banning to enter [Kuek's] cell and seize . . . Kuek's items. There is evidence in the record that [Kuek] and his cellmates [sic] were removed from the jail cell prior to the warrantless search but no evidence in the record as to why the [DCDC] correctional officers could not have waited until Detective Preston obtained the warrant . . . before conducting their search.

> Moreover, it is clear that the [DCDC] correctional officers did not conduct the warrantless search for any institutional security reasons but that the search was conducted for the purpose of discovering information that could lead to additional charges being filed against [Kuek]. And those additional charges were filed shortly after the search was conducted. This Court cannot stand by and allow the State to use the fruits of this search.

The U.S. Supreme Court issued its opinion in *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), in 1984. The Second Circuit issued the *Cohen* decision in 1986. And although various jurisdictions are divided on the issue of whether a pretrial detainee is entitled to certain minimum privacy rights to his or her cell under differing circumstances, neither the U.S. Supreme Court nor the Nebraska Supreme Court have further addressed the specific issue as framed by the *Cohen* court. See, e.g., *United States v. Jeffus*, 22 F.3d 554 (4th Cir. 1994) (upholding search of pretrial detainee's cell on basis that defendant did not have an expectation of privacy in his jail cell); *State v. Andujar*, 899 A.2d 1209, 1225 (R.I. 2006) (holding "preventing the commission of serious felonies within the jailhouse [by a pretrial detainee] is a compelling reason to allow prison officials unfettered access to inmates' cells"); *State v. Ramirez*, 79 Conn. App. 572, 830 A.2d 1165 (2003) (because defendant did not have any reasonable expectation of privacy with regard to the items within his prison cell, Fourth Amendment was not implicated when correctional officers removed a letter from defendant's cell); *State v. O'Rourke*, 792 A.2d 262 (Me. 2001) (applying *Hudson* to find that pretrial detainee lacked a reasonable expectation of privacy in his jail locker and noting that State's motive for searching the locker was irrelevant); *State v. Henderson*, 271 Ga. 264, 517 S.E.2d 61 (1999) (court concluded *Hudson* does not deprive pretrial detainees of all Fourth Amendment protection); *State v. Bolin*, 693 So. 2d 583 (Fla. App. 1997) (finding that *Hudson* holding that prison inmate does not have reasonable expectation of privacy in prison cell entitling him to Fourth Amendment protection against unreasonable searches and seizures applies to pretrial detainees); *People v. Phillips*, 219 Mich. App. 159, 162, 555 N.W.2d 742, 743 (1996) (finding that "the rationale underlying the Court's decision in *Hudson*

applies equally to pretrial detainees and inmates confined in jails"); *Soria v. State*, 933 S.W.2d 46, 60 (Tex. Cr. App. 1996) (reasoning in *Hudson* "applies in the context of pretrial detention in jail"); *McCoy v. State*, 639 So. 2d 163 (Fla. App. 1994) (warrantless search ordered by prosecutor solely to uncover incriminating evidence from defendant's cell, where no legitimate prison objectives justified search, violated pretrial detainee's Fourth Amendment rights); *State v. Apelt*, 176 Ariz. 349, 861 P.2d 634 (1993) (without discussion, *Hudson* applied to search of pretrial detainee's cell and person); *Thomas v. State*, 263 Ga. 85, 428 S.E.2d 564 (1993) (search of pretrial detainees' cells, apparently undertaken to find evidence of charged crimes, upheld on general notion of "diminished" expectation of privacy in jail cell); *Lowe v. State*, 203 Ga. App. 277, 416 S.E.2d 750 (1992) (warrant was required to search pretrial detainee's cell where search was not to maintain security and discipline in the prison but to further the State's effort to obtain a conviction); *State v. Martin*, 322 N.C. 229, 367 S.E.2d 618 (1988) (since pretrial detainee did not have a reasonable expectation of privacy within jail cell, letter obtained in search of cell was admissible).

Kuek urges that his pretrial detainee status in conjunction with the fact that the search of his cell was not connected to reasons of institutional security should result in this court recognizing privacy rights in this instance. The State argues that the rule in *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), should apply to all prisoners, that is, that prisoners have no privacy right in their cells. In the alternative, the State argues that any privacy right (like the privacy right recognized in *United States v. Cohen*, 796 F.2d 20 (1986)) would not extend to information that Kuek seeks to protect in furtherance of the commission of a new crime (as opposed to using the search to obtain evidence governing the current crime for which the defendant was charged and being held).

As framed, this court would need to decide whether the U.S. Supreme Court's statement in *Hudson* is controlling, or whether the U.S. Supreme Court or Nebraska Supreme Court would recognize a privacy right here not previously recognized by either court under these circumstances. But, rather than predict the outcome of a future court's resolution of this matter, I believe the difficulty in knowing whether there was any violation here by the State dictates the outcome of Kuek's motion.

In *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009), the U.S. Supreme Court addressed application of the exclusionary rule to evidence obtained by officers in jurisdiction 1 based upon erroneous information obtained from a sheriff's office in jurisdiction 2. The officers in jurisdiction 1 were told by the sheriff's office in jurisdiction 2 that there was an outstanding warrant for the defendant, who was then arrested. The report was in error and the warrant should have been removed from the sheriff's records but was not due to the negligence of personnel in the sheriff's office. Contraband was discovered during the search incident to the defendant's mistaken arrest.

Writing for the majority, Chief Justice Roberts stated that the exclusionary rule did not apply to these facts holding that "[h]ere the error was the result of isolated negligence attenuated from the arrest. We hold that in these circumstances the jury should not be barred from considering all the evidence." *Herring v. United States*, 555 U.S. at 137. And in framing the Court's exclusionary rule analysis, Chief Justice Roberts stated that "[suppression] turns on the culpability

of the police and the potential of exclusion to deter wrongful police conduct." *Id*. In that regard, he stated:

> Judge Friendly wrote that "[t]he beneficent aim of the exclusionary rule to deter police misconduct can be sufficiently accomplished by a practice . . . outlawing evidence obtained by flagrant or deliberate violation of rights." The Bill of Rights as a Code of Criminal Procedure, 53 Calif. L. Rev. 929, 953 (1965) (footnotes omitted).

*Herring v. United States*, 555 U.S. at 143. In so reasoning, Chief Justice Roberts wrote:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.

*Herring v. United States*, 555 U.S. at 144.

These themes were repeated by the U.S. Supreme Court in *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011), which touched upon relevant considerations in the instant case. In addressing police conduct done in connection with existing legal authority on the subject, the Supreme Court held:

> Under our exclusionary-rule precedents, this acknowledged absence of police culpability dooms [the defendant's] claim. . . . The police acted in strict compliance with binding precedent, and their behavior was not wrongful. Unless the exclusionary rule is to become a strict-liability regime, it can have no application in this case.

*Davis v. United States*, 564 U.S. at 240.

Here, the district court's opinion does not contain any discussion of the application of the exclusionary rule. After reviewing the facts associated with the search and concluding that the police conduct in this case was "similar enough in nature to the facts in Cohen to justify adoption of the Cohen analysis," the district court simply stated that "[t]his Court cannot stand by and allow the State to use the fruits of this search."

Applying considerations governing proper application of the exclusionary rule announced in *Herring* and *Davis*, both of which were issued well after the Second Circuit's decision in *United States v. Cohen*, 796 F.2d 20 (1986), I reach a different conclusion. Assuming without deciding that a precedential court would find that a pretrial detainee does have some reasonable expectation of privacy in papers in his or her cell and that a warrant was required in connection with a search of this nature (here, the search of Kuek's cell to investigate the potential commission of a new crime), I must look to determine whether the DCDC's seizing of Kuek's paperwork 30 minutes before the police arrived with the warrant to search Kuek's cell for that paperwork is sufficiently culpable to justify application of the exclusionary rule. I find it does not.

As the U.S. Supreme Court articulated in *Herring* and *Davis*, the purpose in applying the exclusionary rule is to effect deterrence from future violations by police. And in order to ensure "that such deterrence is worth the price paid by the justice system," *Herring v. United States*, 555

U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) (to exclude evidence of witness tampering by Kuek found during this search), there must be a sufficient degree of culpability by police in connection with its conduct in this instance. And whether the culpability standard is described as flagrant, deliberate, intentional, reckless, or grossly negligent (all of which the U.S. Supreme Court has used in describing the requisite conduct necessary to apply the rule) that conduct must present a degree of culpability simply not present in this record.

First, at the time of the search, it is at least possible that a warrant was not required to search Kuek's cell at all. Based upon the U.S. Supreme Court's holding in *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), the Court specifically stated that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in [the prisoner's] cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." The Court's language does not distinguish pretrial prisoners from convicted ones or distinguish the nature of the search. Arguably, that makes this situation analogous to *Davis* which explicitly provides the exclusionary rule is not applicable when the search is conducted in accordance with existing precedent. It cannot be said that relying on existing law or precedent meets this sufficiently culpable standard. In *Schlothauer v. Robinson*, 757 F.2d 196 (8th Cir. 1985), the Eighth Circuit Court of Appeals held that, although 11 days before the defendant's arrest, the Eighth Circuit had held that a warrantless arrest of a defendant in his home, in the absence of exigent circumstances, violated the Fourth Amendment, the Supreme Court had yet to decide the issue. As a result, the court noted that it could not say that the law was "clearly established" at the time of defendant's arrest and, "[b]ecause the officers acted in accordance with Nebraska law, and because police officers are not charged with predicting the future course of constitutional law, *Pierson v. Ray,* 386 U.S. at 557, we conclude that the district court properly directed a verdict in this case." *Schlothauer v. Robinson*, 757 F.2d at 198. And although the Second Circuit distinguished *Hudson* in 1986, the U.S. Supreme Court has never revisited its 1984 holding.

Second, rather than simply rely on *Hudson*, the police here sought and obtained a warrant and the seizure of the items by DCDC took place 30 minutes before the police arrived with the warrant and was based upon what DCDC described to police as its standard procedure. Although DCDC clearly had the right to search and seize items from Kuek's cell without a warrant if pursuing matters of institutional security, Kuek argues DCDC did not have that right here and "jumped the gun" in seizing his paperwork prior to the police's production of a warrant under the circumstances. Detective Preston testified that he perceived DCDC's policy of seizing documents in advance of a search as akin to police securing a scene in advance of the production of a warrant. The question thus becomes whether the DCDC's perceived policy here, and Preston's reliance thereon in effecting the early seizure of Kuek's paperwork, constituted sufficiently culpable conduct to trigger application of the exclusionary rule. While the DCDC policy of removing property from Kuek's cell prior to a warrant being produced may or may not have constituted a violation of Kuk's privacy rights depending upon the direction of a future precedential court's ruling, I simply cannot find that DCDC's actions here or the police's reliance thereon rose to the level of sufficiently culpable conduct to justify application of the exclusionary rule in light of the U.S. Supreme Court's statements in *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 172

- 10 -

L. Ed. 2d 496 (2009), and *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). The conduct of the officer in conjunction with the current state of the law does not provide a sufficient basis for me to find that this was the type of flagrant, deliberate, reckless, or grossly negligent action that was intended to be deterred with the application of the exclusionary rule. Accordingly, the order of the district court granting Kuek's motion to suppress is reversed and the cause is remanded for further proceedings.

CONCLUSION

For the reasons explained above, the district court's order is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.